Jack W. Fiander, Attorney
Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue #93
Yakima, WA 98908
(509) 969-4436 or (509) 961-0096
towtnuklaw@msn.com

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In Re: | No. 2:22-cv-00142-BJR |
| **CITY OF SEATTLE,** | **MOTION TO DISMISS** |
| Plaintiff, | |
| v. | |
| **SAUK-SUIATTLE TRIBAL COURT**, et al., | |
| Defendants. | |

INTRODUCTION

Those characterized as the "tribal defendants" in plaintiff's complaint—the Sauk-Suiattle Tribal Court, its judge and court clerk, and the Sauk-Suiattle Indian Tribe move the Court to dismiss this civil action. The Court should not entertain this action as plaintiff has not exhausted its tribal court remedies.

FACTUAL BACKGROUND

MOTION TO DISMISS - 1

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

The City of Seattle has a population of 724,305 and a total approximate annual operating budget of $6 billion. Tax revenue is over $50 million annually.[1]  Its city legal department is composed of 90 attorneys and nearly as many staff members.[2]  The Sauk-Suiattle Indian Tribe has a total population of 314 people, over one-half of which are under the age of majority and approximately 100 of which reside upon the tribe's 19 acre reservation.  According to U.S. Bureau of Indian Affairs American Indian Population Estimates and Labor Force Reports, the unemployment rate for Sauk-Suiattle Indians is approximately 65% and 14% of those employed are below the federal poverty level.

### Procedural Posture

On January 7, 2022, the Sauk-Suiattle Indian Tribe brought a civil action in its tribal court seeking a declaratory judgment that certain activities of defendant's wholly owned electric utility corporation impacts the health, welfare, economic security of the tribe and damages natural resources which the tribe has a trust duty to protect and reserved treaty rights in.

On February 3, 2022 counsel for Seattle appeared in the tribal court and filed a motion seeking dismissal of the civil action pending in tribal court.  As a prior motion to disqualify the City's counsel from representation was filed earlier, no hearing on the City's motion to dismiss has even been scheduled.

### ARGUMENT

<u>This civil action is unripe as the Tribal Court has not even yet considered the merits of the Tribal Court civil action complained of.  Consequently, Tribal Court remedies have not been exhausted and this cause should be dismissed.</u>

---

[1] *See generally*, City of Seattle 2019 Adopted and 2020 Endorsed Budget. https://www.seattle.gov/documents/Departments/FinanceDepartment/19adoptedbudget/GFRevenueOverview.pdf

[2] Seattle Municipal Archives, History of the Office of City Attorney/Corporate Counsel, https://www.seattle.gov/cityarchives/seattle-facts/city-officials/corporation-counsel/city-attorney/history

MOTION TO DISMISS - 2

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

Notwithstanding that the City's motion filed with the tribal court and the matter has not yet even been fully briefed nor argued (nor even scheduled) before the tribal court, the City filed suit in the United States District Court naming the Tribal Court judge—who has not yet even entertained proceedings in the case—and the Tribal Court Clerk, who merely accepts, records and "filed" stamps documents when they are filed, as defendants.  This appears little more than a bullying tactic patently intended to frighten tribal court staff who to date have done nothing in the case except accept two or three documents for filing.

It is obvious from the city defendant's complaint, and accompanying "document-dump" of exhibits (a standard Big Law Firm tactic) that plaintiff asserts the same arguments made in its motion to dismiss filed in the tribal court.  The City is represented by the international law firm of K & L Gates, which has 2000 lawyers in 40 offices around the globe.  The Sauk-Suiattle Indian Tribe Office of Legal Counsel has a staff of one attorney and a legal secretary.

The City's premature filing of this civil action appears premised upon the premature, and prejudicial, assumption that it is a foregone conclusion that the Tribal Court, rather than providing a full and fair adjudication to all parties before it, is presupposed to decide against the plaintiff.  As the United States Supreme Court itself has noted, however, "Tribal courts have repeatedly been recognized as appropriate forums for the exclusive adjudication of disputes affecting important personal and property interests of both Indians and non-Indians".  Santa Clara Pueblo v. Martinez, 436 U.S. 49, 65 (1978).  In this Circuit respect for the tribunals of Indian tribes requires far more than the presumption of unfairness attributed to them demonstrated by the plaintiff's filing of this action before a judge of the Tribal Court has even determined whether it possesses jurisdiction.  In this respect, the filing of this suit by the City also runs afoul of the doctrine of unripeness, a doctrine Seattle has itself relied upon.  Clark v.

MOTION TO DISMISS - 3

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

City of Seattle, 899 F. 3d 802 (9th Cir. 2018).  Courts, including tribal courts, possess jurisdiction to determine their own jurisdiction. The mandatory case law in this Circuit is that a litigant must first present its argument to the tribal court that it lacks jurisdiction.  That principle is too firmly established to be subject to question.

The Supreme Court requires that tribal courts consider the issue of their own jurisdiction first, with federal court actions to be dismissed or stayed pending exhaustion of tribal court remedies. National Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845, 856-57 (1985). This exhaustion requirement advances the principles of tribal self-governance and self-determination and prevents infringement upon tribal law-making authority. *See* Iowa Muual Insurance Co. v. LaPlante, 480 U.S. 9, 14-15 (1987). In the Ninth Circuit the exhaustion of tribal remedies is not discretionary; it is *mandatory*. *See* Yellowstone County v. Pease, 96 F. 3d 1169, 1171 (9th Cir. 1996).  Although a federal court may not exercise jurisdiction over a civil dispute relating to reservation affairs before an appropriate Indian tribal court system has first had an opportunity to determine its own jurisdiction, exhaustion is required as a matter of comity and is not a jurisdictional prerequisite. Iowa Mutual, *supra* 480 U.S. at 16, n. 8. Therefore, the exhaustion requirement does not *deprive* the federal courts of subject matter jurisdiction, rather a tribal court's determination of whether or not tribal jurisdiction exists is ultimately subject to review after completion of the tribal adjudication. Iowa Mutual, 480 U.S. at 19; *see also* National Farmers, 471 U.S. at 857.

The Supreme Court has explained that examination of tribal court jurisdiction "should be conducted in the first instance in the Tribal Court itself" as part of the "policy of supporting tribal self-government and self-determination." Nat'l Farmers Union Ins. Cos. v. Crow Tribe,

MOTION TO DISMISS - 4

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

471 U.S. 845, 856 (1985). "[F]ederal court jurisdiction does not properly arise until available remedies in the tribal court system have been exhausted."

A tribal court's initial evaluation of its own jurisdiction "serves several important functions, such as assisting in the orderly administration of justice, providing federal courts with the benefit of tribal expertise, and clarifying the factual and legal issues that are under dispute and relevant for any jurisdictional evaluation." DISH Network Serv., LLC v. Laducer, 725 F.3d 877, 882 (8th Cir. 2013). Consistent with these principles "considerations of comity direct that tribal remedies be exhausted before a federal court can exercise jurisdiction over a challenge to tribal jurisdiction." Id. (citations and internal quotation marks omitted). Exhaustion of tribal court remedies is "mandatory … when a case fits within the policy." Gaming World Int'l, Ltd. v. White Earth Band of Chippewa Indians, 317 F.3d 840, 849 (8th Cir. 2003). The exhaustion doctrine provides that a federal court should "stay[] its hand until after the Tribal Court has had a full opportunity to determine its own jurisdiction." Nat'l Farmers Union Ins. Co., 471 U.S. at 857. "At a minimum, exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts." Iowa Mut. Ins. Co., 471 U.S. at 16–17; Nat'l Farmers Union Ins. Co., 471 U.S. at 857.

In light of the strong presumption against "assuming jurisdiction over unexhausted claims" in the tribal context, the balance will shift in favor of not requiring exhaustion *only* if one of the limited exceptions to the exhaustion doctrine applies[.] Alvarez v Tracy, 773 F. 3d 1011 (9th Cir. 2014). Precedent indicates that cases implicating tribal sovereignty and the tribal exhaustion requirement are exceptional. In Allstate Indemnity Corporation v. Stump, 191 F.3d 1071 (9th Cir.), *amended* 197 F.3d 1031 (9th Cir. 1999), the Ninth Circuit recognized that, because tribal sovereignty is of critical importance, the tribal exhaustion requirement is

MOTION TO DISMISS - 5

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

appropriately addressed even *sua sponte*. 191 F.3d at 1073 (*citing* United States v. Tsosie, 92 F.3d 1037,1041 (10th Cir. 1996)):

> Indeed we have found the tribal exhaustion requirement of such import that we have enforced it even when it was not raised until after we had decided the case and issued an opinion. *See* Marceau v. Blackfeet Tribal Authority, 540 F.3d 916, 920 (9th Cir. 2008).

Regarding exhaustion of tribal court remedies, the panel recognized, "as do our sister circuits", that it demonstrates "the heightened sensitivity to tribal sovereignty present in federal-tribal comity cases." *Citing* Smith v. Moffett, 947 F.2d 442, 445 (10th Cir. 1991). Requiring exhaustion of tribal remedies not only fosters mutual respect between sovereigns in a manner similar to abstention in favor of state courts, *see* Iowa Mut. Ins. Co., 480 U.S. at 16 n.8, but also promotes tribal self-government through the development of the tribal court system. Id. at 16–17. Thus the tribal exhaustion doctrine implicates unique and "exceptional" concerns beyond those implicated in federal-state comity cases. Further, the Supreme Court recognized in Santa Clara Pueblo v. Martinez, 436 U.S. 49, 71 (1978), that respect for tribal courts is particularly important since resolution of issues arising under tribal laws will "frequently depend on questions of tribal tradition and custom which tribal forums may be in a better position to evaluate than federal courts." Id. at 71.  Only if it is "plain" that tribal jurisdiction does not exist and the assertion of tribal jurisdiction is for "no purpose other than delay," exhaustion of tribal remedies is not required. DISH Network Services, *supra* 725 F.3d at 883 (*quoting* Strate v. A–1 Contractors, 520 U.S. 438, 459 n.14 (1997)). The Courts of other circuits have found that exhaustion of tribal court remedies is appropriate in several cases involving corporate entities doing business outside reservations where the effect of their activities implicated the welfare of

MOTION TO DISMISS - 6

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

the tribal community. *See, e.g.*, DISH Network Serv., 725 F.3d at 884 (finding that tribal court jurisdiction is not plainly lacking even if an alleged tort "occurred off tribal lands".

Because Seattle's alleged conduct and activities impose direct threats and harm on the natural resources and affect the welfare of the Sauk-Suiattle Indian Tribe, including its people within its reservation the Tribal Court's jurisdiction is not plainly lacking. As the Supreme Court has explained, rights reserved by treaties to harvest salmon is as much necessary to tribal people in the Pacific Northwest as the air they breathe. United States v. Winans, 198 U.S. 371, 381 (1905). "Threats to tribal natural resources, including those that affect tribal cultural and religious interests, constitute threats to tribal self-governance, health and welfare." FMC Corp. v. ShoshoneBannock Tribes, 942 F.3d 916, 935 (9th Cir. 2019) (citations omitted).

Tribal exhaustion promotes "Tribal self-government and self-determination" by affording Tribal courts "'the first opportunity to evaluate the factual and legal basis for the challenge' to [their] jurisdiction." Iowa Mutual, 480 U.S. at 15-16 (*quoting* Nat'l Farmers, 471 U.S. at 856). Tribal exhaustion also serves a functional purpose in federal courts' review of Tribal jurisdiction. As this Court has recognized, Tribal exhaustion "assist[s] in the orderly administration of justice, provid[es] federal courts with the benefit of tribal expertise, and clarif[ies] the factual and legal issues that are under dispute and relevant for any jurisdictional evaluation." DISH Network, 725 F.3d at 882 (*citing* Nat'l Farmers, 471 U.S. at 856-57); Duncan Energy Co. v. Three Affiliated Tribes of Ft. Berthold Reservation, 27 F.3d 1294, 1300 (8th Cir. 1994) (*quoting* Nat'l Farmers, 471 U.S. at 856) ("[T]he requirement of tribal

MOTION TO DISMISS - 7

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

exhaustion contemplates the development of a factual record that will serve the 'orderly administration of justice in the federal court.'").[3]

What is striking about Seattle's complaint is its effort to portray itself as a "non-Indian" or "nonmember." Seattle and its electricity generating utility are municipal *corporations* and its wholly owned electrical utility is a corporate entity engaged in the business of generating and selling the product of electricity. *See*, Plaintiff's Complaint (ECF 2) at ¶ 8 (Seattle is a municipal corporation, as is its utility).[4] The cases which Seattle seeks to rely upon in its complaint as exempting itself from the exhaustion requirement involved actual *people*. However, as was stated by the United States Supreme Court, "the corporate personality is a fiction", whose "presence" within a jurisdiction is determined by the effect of its activities:

> [U]nlike an individual, its "presence" without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf[.]

International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). In International Shoe, the question was whether it was consistent with due process for the courts of Washington to exercise jurisdiction over a Delaware corporation which released items in the stream of commerce which affected Washington's interest in compliance with its laws. The Supreme Court held that it was. International Shoe Company made in essence the same argument that Seattle makes here—that its *physical presence* in Washington was a jurisdictional prerequisite to exercise of authority over it. The Court rejected the argument, stating that:

---

[3] "Certainty is not required because our review at this stage of the proceeding is solely to establish whether the lack of jurisdiction is 'plain,' that is, whether its absence is so obvious that the invocation of tribal jurisdiction serves no other purpose than delay." DISH Network, 725 F.3d at 884 (*quoting* Strate, 520 U.S. at 459 n.14).

[4] The allegations in ¶¶ 13-15 of Seattle's complaint endlessly referencing Federal Energy Regulatory Commission (FERC) proceedings are mere legal conclusions, implying that the existence of FERC proceedings preempts tribal jurisdiction. That is a *defense* to be raised before the tribal court judge, not a bar to jurisdiction.

MOTION TO DISMISS - 8

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

> "Presence" in the state in this sense has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given.

326 U.S. at 317. Seattle asserts as the basis for lack of tribal court jurisdiction is that its physical facilities "are not located on Sauk-Suiattle Reservation land or fee land within the Sauk-Suiattle Reservation." (Complaint ¶¶ 16-25). *See also*, Complaint (ECF 2) ¶ 28. Unlike the average human persons who were the subjects of cases relied upon by Seattle and its electric corporation, corporations situated *beyond* a jurisdiction's borders, by putting objects or products (such as electricity) into the stream of commerce can result in impacts *within* a jurisdiction which can have devastating impacts upon the health, welfare, public safety and economic security of the citizens of that jurisdiction and their environment and resources. Corporations are different from humans, their activities can have harmful impacts upon areas in which they are not physically located. Contrary to plaintiff's arguments, numerous federal courts considering the issue of tribal court jurisdiction over corporate or business entities have concluded that "physical location, while *relevant*, is not *dispositive* because the focal point under Montana is the location of the nonmember's activities or conduct." *See, e.g.*, Sprint Communications Co. L.P. v. Wynne, 121 F. Supp. 3d 893, 899 (D.S.D. 2015) (*citing* Attorney's Process & Investigation, 609 F.3d at 937); *see also* Fed. Trade Comm'n v. Payday Fin., LLC, 935 F. Supp. 2d 926, 940 (D.S.D. 2013) (stating that the focus of the Montana analysis is "not solely the nonmember['s] physical location") (emphasis in original).

The reason for not limiting the second Montana exception's analysis to the nonmember's physical location is straightforward and simply: "When a nonmember begins an activity outside the reservation, the effects of which are directed on to the reservation, it is not

MOTION TO DISMISS - 9

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

clear that such an activity occurred wholly outside the reservation. The precise location of the [nonmember's] activity or conduct should be evaluated by the tribal court when it applies Montana in the first instance." Sprint Communications Co. L.P., *supra* 121 F. Supp. 3d at 900 n.5 (D.S.D. 2015). Further, "[r]educing the Montana jurisdictional analysis from a thorough investigation of the nonmember's course of conduct and contact with the reservation, to a mere determination of the nonmember's physical location is improper and would render Montana's jurisdictional inquiry inapplicable." Payday Fin., LLC, 935 F. Supp. 2d at 940; *see also* id at 939 (recognizing that a nonmember "can conduct business on the reservation and can affect the Tribe and tribal members without physically entering the reservation").

When it comes to a tribe's regulation of natural resources under the second Montana exception, a tribe "may quite legitimately seek to protect its members from noxious uses that threaten tribal welfare or security, or from nonmember conduct on the land that does the same." Plains Commerce Bank v. Long Family Cattle Co., 554 U.S. 316 at 336 (2008). This is because "[t]hreats to tribal natural resources, including those that affect tribal cultural and religious interests, constitute threats to tribal self-governance, health and welfare." FMC Corp. v. Shoshone-Bannock Tribes, 942 F.3d 916, 935 (9th Cir. 2019), *cert. denied*, 141 S. Ct. 1046 (2021).

The Court in Attorney's Process & Investigation, 609 F.3d at 938, favorably cited the Ninth Circuit's decision in Elliott v. White Mountain Apache Tribal Court, 566 F.3d 842, 849 (9th Cir. 2009), which considered the extent of alleged damage before deciding whether a tribe had colorable jurisdiction to enforce regulations prohibiting trespass and requiring a permit to ignite a fire on tribal land. The Ninth Circuit in Elliott concluded that a tribe has a "strong interest" in the "prevention of forest fires, and preservation of its natural resources," which can

MOTION TO DISMISS - 10

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

plausibly support tribal court jurisdiction under the second Montana exception. Id. at 850. The court noted "the regulations at issue are intended to secure the tribe's political and economic well-being, particularly in light of the result of the alleged violations of those regulations in this very case: the destruction of millions of dollars of the tribe's natural resources." Id.

In this case, the Sauk-Suiattle Indian Tribe merely seeks a declaration from its own court that the conduct of Seattle's corporate activity is contrary to the laws of the Sauk-Suiattle Indian Tribe. The tribe does not otherwise seek to regulate Seattle's conduct nor has it sought damages nor injunctive relief. The Tribe merely seeks a declaration that plaintiff's conduct contravenes certain laws of the Sauk-Suiattle Tribe by damaging salmon resource the tribe has an interest in and duty to protect in the largest producing river of native wild salmon species in the nation. As such, Seattle's alleged conduct and activities impose direct threats and harm on the tribe's natural resources, and impacts those within its reservation who depend upon it such that under the second Montana exception, the Tribal Court's jurisdiction cannot be said to be plainly lacking. The consequences of Seattle's corporate activity outside the reservation threatens the cultural welfare and continuity of the Sahkumehu due to the unique status of salmon and the tribal community's reliance upon it. While Seattle's conduct and activities may have occurred off-reservation, the Sauk-Suiattle Tribe has suffered direct impacts on its reservation. Under similar circumstances, the Ninth Circuit has held that "threats to water rights may invoke inherent tribal authority over non-Indians" pursuant to the second Montana exception. Montana v. U.S. Environmental Protection Agency, 137 F.3d 1135, 1141 (9th Cir. 1998). A river system is a unitary resource. The actions of one user can have an immediate and direct effect on other users." Id.

MOTION TO DISMISS - 11

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

As was stated in Wisconsin v. Environmental Protection Agency, 266 F.3d 741 (7th Cir. 2001) "[N]o case . . . expressly rejects an application of Montana to off-reservation activities that have significant effects within the reservation". 266 F.3d at 749.[5] Indeed, a number of federal courts have recognized that Tribal Nations may exercise civil jurisdiction under Montana over non-Indian activities and conduct originating off reservation, when the activities or conduct are directed towards *or have effects on reservation*. For example, in DISH Network Service L.L.C. v. Laducer, 725 F.3d 877 (8th Cir. 2013), the Eighth Circuit held that the Turtle Mountain Band of Chippewa Indians did not plainly lack jurisdiction over one its member's abuse of process lawsuit in Tribal court against DISH Network, and required the exhaustion of Tribal court remedies. 725 F.3d at 885. DISH argued that Turtle Mountain plainly lacked jurisdiction because even though the Tribal member was served on the reservation, the tort of abuse of process occured where the summons was issued in Minot, North Dakota, off-reservation. Id. at 883-84. Nonetheless, the Court stated that even if the alleged abuse of process tort occurred off tribal lands, jurisdiction would not clearly be lacking in the tribal court because the tort claim arose out of and was related to DISH's ctivities on tribal land." Id. at 884. And in Sprint Communications Co. v. Wynn, 121 F. Supp. 3d 893 (D.S.D. 2015), the United States District Court for the District of South Dakota held that the Oglala Sioux Tribe did not plainly

---

[5] The Supreme Court's recent decision in United States v. Cooley, 141 S. Ct. 1638 (2021), further appears to expand the zone of tribal authority to outside a reservation's borders in order to prevent harm to members of the reservation community. In Cooley, the Court recognized under the second Montana exception that a tribe has the inherent authority to detain and investigate non-Indians entering the reservation for potential violations of federal or state law to protect the health or welfare of the tribal community. Id. at 1643. The Court in Cooley found that the "second [Montana] exception … fits the present case, almost like a glove," as the exception "speaks of the protection of the 'health or welfare of the tribe' and denying tribal police officers such authority would "make it difficult for tribes to protect themselves against ongoing threats." Id. The Court noted that "no treaty or statute has explicitly divested Indian tribes of the policing authority at issue." Id. The Tribe's jurisdiction was not plainly lacking.

MOTION TO DISMISS - 12

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

lack civil jurisdiction over Sprint Communications, despite Sprint having no physical presence on the reservation. 121 F. Supp. 3d at 901. Sprint argued that the Oglala Sioux Tribe lacked jurisdiction over it under the first Montana exception because it did not have a physical presence on the reservation. Id. at 899. The court rejected this argument, holding that it "would exempt from tribal jurisdiction any business that had no physical presence on a reservation regardless of the degree of contact and involvement it has with tribal members or the impact on the tribe's welfare." Id. at 900 (emphasis added). This, the court concluded, would be "inconsistent with . . . the overarching federal policy to encourage tribal selfgovernment and self-sufficiency." Id. (*citing* Fed. Trade Comm'n v. Payday Fin., LLC, 935 F. Supp. 2d 926, 939 (D.S.D. 2013)):

> [W]hen a nonmember begins an activity outside the reservation, the effects of which are directed on to the reservation, it is not clear that such an activity occurred wholly outside the reservation.

Id. at 899 n.5. In AT&T Corp. v. Oglala Sioux Tribe Utility Commission, No. CIV 14-4150, 2015 WL 5684937 (D.S.D. Sept. 25, 2015), while AT&T had no physical presence on the reservation, the court noted that under Montana, physical location is merely *relevant*, not *dispositive*, and that the focal point of Montana analysis is the location of the activity or conduct, not the location of the nonmember him or herself." Id. at 6 (*citing* Sprint Communications, *supra* 121 F. Supp. 3d at 899) 990 ("Sprint's position would exempt from tribal jurisdiction any business that had no physical presence on a reservation regardless of . . . the impact on the tribe's welfare"). The court pointed out that in DISH Network, this Court "observed that while an alleged tort of abuse of process may have taken place off reservation land, the harm of the tort would still be felt on the reservation[.]" Id. In concluding that the Oglala Sioux Tribe's jurisdiction to regulate AT&T was not plainly lacking, the court observed that "[a] holding

MOTION TO DISMISS - 13

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

dependent upon physical presence would also ignore the challenges that have come about concerning electric communications and electronic transactions."

Wisconsin v. Environmental Protection Agency, 266 F.3d 741 (7th Cir. 2001) concerned the EPA's decision granting TAS status to the Mole Lake Band of Lake Superior Chippewa Indians. 266 F.3d at 743. In order to be granted TAS status, the EPA required the Mole Lake Band to demonstrate under the Montana framework that it "already possessed inherent authority over the activities undoubtedly affected by [its] water regulations". The State of Wisconsin argued that the Mole Lake Band could not enforce its water quality standards against off-reservation polluters, as "[t]his is a classic extraterritorial effect, . . . and takes this case beyond the scope of Montana[.]" Id. The court, however, did not view this as impermissible under the Montana framework.

> [A]ctivities located outside the regulating entity (here the reservation), and the resulting discharges to which those activities can lead, can and often will have "serious and substantial" effects on the health and welfare of the downstream state or reservation. There is no case that expressly rejects an application of Montana to off-reservation activities that have significant effects within the reservation.

Id. at 749. Because the Band has demonstrated that its (water) resources were essential to its survival, it was reasonable for the tribe to exercise authority over water quality on the reservation, even though that power entails some authority over off-reservation activities. The cases discussed herein establish that the tribe's civil jurisdiction over such activities and conduct is not "plainly" lacking such that this court must commandeer adjudication of the case from the Sauk-Suiattle Tribal Court as if that court is in such a state of pupilage as to be considered incapable of resolving a complex jurisdictional decision involving questions of fact, law and tribal custom.  Such perceptions about the capabilities of modern tribal courts should

MOTION TO DISMISS - 14

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

be relegated to the distant and less enlightened past in the United States Courts. *See* the patronizing example set by the court in Elk v. Wilkins, 112 U.S. 94 (1884):

> The members of those tribes owed immediate allegiance to their several tribes, and were not part of the people of the United States. They were in a dependent condition, a state of pupilage, resembling that of a ward to his guardian.

112 U.S. 99.

## CONCLUSION

In Hardin v. White Mountain Apache Tribe, 779 F. 2d 476 (9th Cir. 1985), the tribal appellant was awarded its attorney fees for responding to a lawsuit filed by the plaintiff even though the doctrine of tribal sovereign immunity was so firmly established in this Circuit as to render plaintiff's case so unwarranted as to be in bad faith. This court *sua sponte* should do the same. Exhaustion of tribal remedies is so established that its application is mandatory. Seattle nevertheless filed an action in this court suing the Sauk-Suiattle Tribal Court, its judge and court clerk, and the tribe itself when it had already filed a motion to dismiss the action in Tribal Court which had not even been heard. The only reasonable conclusion is that this case was filed to intimidate a judge and clerk from docketing and entertaining the case in tribal court. That manifests a disrespect for tribal courts that the Supreme Court has deemed an appropriate forum for resolution of disputes involving non-tribal persons or entities which even the courts of the State of Washington extend.[6] The Court should dismiss this case and award defendants attorneys fees for 31+ hours their little legal staff had to expend on it.[7]

---

[6] *See, e.g.,* In Re Beuhl, 87 Wn. 2d 649 (1976); *see also* RCW 13.34.260 (Acts, Records, and Proceedings of Indian Tribe or Band given Full Faith and Credit).

[7] To do otherwise sends a message that the value of legal work of attorneys representing Indian tribes is less valuable than that of other professionals working on the same case. A perception that tribal nations, and those they employ, have long faced and an attitude that should be retired from the history of this nation.

MOTION TO DISMISS - 15

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com

DATED this 14th day of February, 2022.

    Respectfully submitted,

    SAUK-SUIATTLE INDIAN TRIBE
    By:

    S/Jack W. Fiander

    _____
    Jack W. Fiander, General Counsel
    Sauk-Suiattle Indian Tribe
    Towtnuk Law Offices, Ltd.
    Sacred Ground Legal Services, Inc.
    Counsel for Plaintiff

    Certificate of Service

The undersigned certifies the foregoing was filed with the Clerk of Court with copies served upon all counsel of record utilizing the Court's CM/ECF system.

    S/Jack W. Fiander

MOTION TO DISMISS - 16

Towtnuk Law Offices, Ltd.
Sacred Ground Legal Services, Inc.
5808A Summitview Avenue, #93
Yakima, WA 98908
(509) 969-4436
towtnuklaw@msn.com