The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE CITY OF SEATTLE,<br><br>                    Plaintiff,<br><br>     v.<br><br>SAUK-SUIATTLE TRIBAL COURT; JOSH WILLIAMS, in his official capacity as Sauk-Suiattle Tribal Court chief judge; JACKIE VARGAS, in her official capacity as Sauk-Suiattle Tribal Court clerk; and SAUK-SUIATTLE INDIAN TRIBE,<br><br>                    Defendants. | Case No. 2:22-cv-00142-BJR<br><br>PLAINTIFF THE CITY OF SEATTLE'S NOTICE OF SUPPLEMENTAL AUTHORITY |

Pursuant to LCR 7(n), Plaintiff The City of Seattle (the "City") submits the following relevant authority, attached hereto as Exhibit 1, in support of the City's Complaint for Declaratory Judgment and Injunctive Relief (ECF 2), the City's Motion for Preliminary Injunction (ECF 5), the City's Reply in Support of its Motion for Preliminary Injunction (ECF 27), and the City's Opposition to Defendants' Motion to Dismiss (ECF 24): *Ute Indian Tribe of the Uintah & Ouray Rsrv. v. McKee*, No. 20-4098, 2022 WL 1231677 (10th Cir. April 27, 2022).

DATED this 1st day of June, 2022 at Seattle, Washington.

PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY
CASE NO. 2:22-CV-00142-BJR - 1

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE  +1 206 623 7580
FACSIMILE: +1 206 623 7022

K&L GATES LLP

By: *s/ Kari L. Vander Stoep*
    Kari L. Vander Stoep, WSBA # 35923
    Christina A Elles, WSBA # 51594
925 Fourth Avenue
Suite 2900
Seattle, Washington  98104-1158
Tel: +1 206 623 7580
Fax: +1 206 623 7022
Email: kari.vanderstoep@klgates.com
Email: christina.elles@klgates.com

Attorneys for Plaintiff
The City of Seattle

PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY
CASE NO. 2:22-CV-00142-BJR - 2

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

# Exhibit 1

FILED
United States Court of Appeals
Tenth Circuit

April 27, 2022

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

───────────────────────────────

UTE INDIAN TRIBE OF THE UINTAH
AND OURAY RESERVATION,

    Plaintiff - Appellant,

v.

GREGORY D. MCKEE; T & L
LIVESTOCK, INC.; MCKEE FARMS,
INC.; GM FERTILIZER, INC.,

    Defendants - Appellees.

No. 20-4098

───────────────────────────────

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:18-CV-00314-HCN)**

───────────────────────────────

Frances C. Bassett, Patterson Earnhart Real Bird & Wilson LLP, (Jeremy J. Patterson with her on the briefs), Louisville, Colorado, for Plaintiff-Appellant

J. Craig Smith, Smith Hartvigsen, PLLC, (Clark R. Nielsen, Jennie B. Garner, and Devin L. Bybee with him on the brief), Salt Lake City, Utah, for Defendants-Appellees

───────────────────────────────

Before **BACHARACH**, **KELLY**, and **CARSON**, Circuit Judges.

───────────────────────────────

**CARSON**, Circuit Judge.

───────────────────────────────

    Courts serve the important function in our society of dispassionately resolving legal disputes. But a court may do so only when its jurisdiction covers the parties

and the subject matter of the dispute. This appeal boils down to whether a tribal court has jurisdiction over a dispute between the tribe and a non-Indian about rights to water within reservation boundaries but not on Indian land.

This case arises from a long-running irrigation-water dispute between Plaintiff Ute Indian Tribe of the Uintah and Ouray Reservation and Defendant Gregory McKee, who is not a member of the Tribe.[1] Defendant owns non-Indian fee land within the Ute reservation's exterior boundaries and uses water from two irrigation canals flowing through his property. Plaintiff claims the water belongs to the United States in trust for the Tribe.

Plaintiff sued Defendant in the Ute tribal court, alleging that Defendant had been diverting the Tribe's water for years, and won. Plaintiff then petitioned the district court to recognize and enforce the tribal-court judgment. But the district court dismissed the case after holding that the tribal court lacked jurisdiction to enter its judgment. Because we too conclude that the tribal court lacked jurisdiction over Plaintiff's dispute with a nonmember of the Tribe arising on non-Indian fee lands, we exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

I.

In the nineteenth century, the federal government entered a treaty with many bands of the Ute Indian Tribe to create a tribal reservation. See Treaty with the Ute

---

[1] The other defendants, T & L Livestock, Inc., McKee Farms, Inc., and GM Fertilizer, Inc., are all businesses owned by Defendant McKee. For clarity, we use "Defendant" to refer to both McKee and his businesses.

Indians art. 2, March 2, 1868, 15 Stat. 619.  In the early twentieth century, under the General Allotment Act of 1887, ch. 119, 24 Stat. 388 (codified as amended at 25 U.S.C. § 331 *et seq*.), the United States divided the reservation into "allotments," creating individual parcels of land that the government then gave to individual tribe members.  See Act of March 3, 1905, ch. 1479, 33 Stat. 1048, 1069.  The government then opened any remaining reservation land for settlement by non-Indians.  See id.  Around the same time, Congress authorized the Uintah Indian Irrigation Project ("UIIP") to build canals and ditches to irrigate the Ute Indians' allotted lands.  See Act of June 21, 1906, ch. 3504, 34 Stat. 325, 375. Congress provided that the Secretary of the Interior would hold title to the UIIP "in trust for the Indians."  Id.

In 1923, the United States, as trustee of the Ute Indians, sued many non-Indians in the District of Utah over the use of irrigation water in the UIIP area.  See United States v. Cedarview Irrigation Co., No. 4427 (D. Utah 1923) ("Cedarview Decree").  The court decreed that the Indians had "the first and an exclusive right . . . to divert from the Uintah River and its tributaries by certain ditches and canals water in certain quantities at certain times and under certain conditions." Id. at 2.  The court explained that any rights that the non-Indian defendants had in the water were subordinate to the Indians' rights, so the court permanently enjoined "all persons diverting or using water" from the UIIP from "hindering, preventing or interfering" with the Ute Indians' water rights.  Id. at 6.

In 1934, Congress passed the Indian Reorganization Act, ch. 576, 48 Stat. 984, 984, 987 (1934) (codified at 25 U.S.C. §§ 5101, 5123), ending the allotment of tribal

3

lands and authorizing Indian tribes to adopt constitutions and charters for self-governance.  The Ute Indian Tribe of the Uintah and Ouray Reservation adopted a constitution and bylaws in 1937, creating a tribal government for its territory.  See Hackford v. Babbitt, 14 F.3d 1457, 1461 (10th Cir. 1994).

Defendant, who is not a member of the Ute Tribe, owns land that was part of the Ute reservation but opened for non-Indian settlement during the allotment period of the early twentieth century.  Two UIIP canals—the Deep Creek Canal and Lateral No. 9—cross Defendant's property.  In 2012, Plaintiff received a report that Defendant was diverting water from the Deep Creek Canal and Lateral No. 9 to flood irrigate his property.  Plaintiff investigated and determined that Defendant was unlawfully misappropriating tribal waters in violation of the Cedarview Decree.

Plaintiff sued Defendant in the Ute tribal court.  Defendant moved to dismiss the complaint for lack of subject-matter jurisdiction.  The tribal court denied the motion, holding that it had subject-matter jurisdiction because the Ute Tribe has sovereign authority to manage the use of its territory and natural resources by tribe members and nonmembers.  The tribal court further held that it had subject-matter jurisdiction also under Montana v. United States, 450 U.S. 544 (1981), because the Tribe can regulate activities of all non-Indians who enter a consensual relationship with the Tribe or whose conduct imperils the Tribe's political integrity, economic security, or health and welfare.  Defendant then ceased participating in the litigation.  After a bench trial, the tribal court found that Plaintiff was the beneficial owner of the water in the Deep Creek Canal and Lateral No. 9 and that Defendant

misappropriated tribal water to irrigate his property. The tribal court entered judgment against Defendant.

To date, Defendant has satisfied no part of the tribal court's judgment. In April 2018, Plaintiff petitioned the District of Utah to recognize and enforce the tribal court's judgment against Defendant. The parties cross-moved for summary judgment. The district court granted Defendant's motion, holding that the tribal-court judgment was unenforceable because the tribal court lacked subject-matter jurisdiction, and dismissed the case. The district court also denied Plaintiff's motion for leave to amend because the court determined that the proposed amendment would have been futile. Plaintiff appeals.

II.

A.

Plaintiff first challenges the district court's grant of summary judgment for Defendant. We review a grant of summary judgment de novo. US Airways, Inc. v. O'Donnell, 627 F.3d 1318, 1324 (10th Cir. 2010) (citation omitted). We review the evidence in the light most favorable to the nonmoving party, affirming only if no genuine dispute exists about any material fact and the movant is entitled to judgment as a matter of law. Tesone v. Empire Mktg. Strategies, 942 F.3d 979, 994 (10th Cir. 2019) (citations omitted). We also review de novo any legal questions the district court resolved in granting summary judgment. In re MDL 2700 Genentech Herceptin (Trastuzumab) Mktg. & Sales Prac. Litig., 960 F.3d 1210, 1224 (10th Cir. 2020) (citation omitted). The scope of a tribal court's jurisdiction is a question of federal

Appellate Case: 20-4098   Document: 010110676381   Date Filed: 04/27/2022   Page: 6

law.  Thlopthlocco Tribal Town v. Stidham, 762 F.3d 1226, 1234 (10th Cir. 2014) (citation omitted).

Indian tribes are independent communities with many rights and powers of self-government, but those powers are limited.  Plains Com. Bank v. Long Fam. Land & Cattle Co., 554 U.S. 316, 327 (2008) (citations omitted).  And while tribal sovereignty includes the authority to adjudicate disputes in tribal courts, a tribal court's jurisdiction cannot exceed the tribe's legislative authority.  Id. at 330 (citation omitted).  For example, tribes can generally regulate only their territory and their members on the reservation.  See id. at 327.  And though Indian tribes can exclude outsiders from tribal land, they have no general authority over nonmembers of the tribe.  Id. at 327–28 (citations omitted).  That is true even when nonmembers engage in activity on the reservation and especially when they do so on "non-Indian fee land"—land owned in fee simple by non-Indians.  Id. at 328 (citation omitted).

The Supreme Court has recognized only two exceptions under which Indian tribes can regulate nonmembers.  Tribes can regulate the activity of nonmembers who enter consensual relationships with them or their members, and they can regulate the activity of nonmembers on reservation land—even non-Indian fee land—if that activity threatens their political integrity, economic security, or health and welfare.  Montana, 450 U.S. at 565–66 (citations omitted).  But these exceptions are narrow, and a tribal court presumptively lacks jurisdiction over nonmembers' activities on non-Indian fee land.  See Plains Com., 554 U.S. at 330.  Thus, Plaintiff bears the burden of showing that one of the exceptions applies if it wishes to overcome the

presumption that it cannot regulate Defendant's activities on non-Indian fee land. Id. (citation omitted).

Plaintiff first argues that it need not resort to the Montana exceptions to establish tribal-court jurisdiction because an Indian tribe has inherent sovereign authority to exclude nonmembers from its territory. Plaintiff argues that because it is the beneficial owner of the exclusive right to use the water in the Deep Creek Canal and Lateral No. 9, its inherent authority to exclude others from its territory includes the authority to exclude others from using its water. And although Defendant, a nonmember of the Tribe, allegedly misappropriated Plaintiff's water on non-Indian fee land, Plaintiff argues that "no rational basis in law or logic" supports treating water differently than territory. Thus, Plaintiff argues that we must determine the merits of its claim to exclusive rights in the water to know whether the tribal court had jurisdiction.

The district court, however, determined that the merits of Plaintiff's claim to the water are inapplicable to the jurisdictional question because regardless of the extent of Plaintiff's water rights, the tribal court lacked jurisdiction over a nonmember's water use on nontribal land.[2] We agree with the district court; we need not wade into the merits of Plaintiff's claim to exclusive rights in the disputed water because the tribal court lacked jurisdiction.

---

[2] In footnote one of its order, the district court suggested that it was skeptical of Plaintiff's claim to exclusive rights in the disputed water. But the district court made clear that it was not deciding the merits of Plaintiff's claim to the water. We also express no opinion on the merits of Plaintiff's claim.

7

Plaintiff concedes that Defendant is not a member of the Tribe and that the alleged misappropriation of water occurred on non-Indian fee land. Supreme Court precedent makes clear then that Plaintiff has no jurisdiction over Defendant's activity unless one of the Montana exceptions applies. See Plains Com., 554 U.S. at 329 (characterizing the Montana exceptions as the only circumstances where Indian tribes can exercise civil jurisdiction over nonmembers on non-Indian fee land); Strate v. A-1 Contractors, 520 U.S. 438, 446 (1997) ("Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation, subject to [the Montana] exceptions . . . ."). Yet Plaintiff urges us to overlook that precedent and hold that as long as an Indian tribe claims an interest in a natural resource on nontribal land, it may exercise civil jurisdiction over a nonmember's use of the natural resource even if the use does not implicate one of the Montana factors. Thus, Plaintiff effectively invites us to create a third exception to the general rule that Indian tribes lack jurisdiction over the actions of nonmembers on nontribal land. We decline the invitation.

To be sure, Indian tribes have inherent sovereign authority to exclude nonmembers from their territories. Plains Com., 554 U.S. at 327–28 (citation omitted). And that authority extends to regulating nonmembers' use of tribal resources on tribal lands. See, e.g., Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 133, 144 (1982) (holding that an Indian tribe's power to exclude includes the power to tax nonmembers' severance of oil and gas from tribal land); Montana, 450 U.S. at 557 (holding that an Indian tribe may prohibit or regulate hunting and fishing by

8

nonmembers on tribal land).  But Plaintiff points to no case in which the Supreme Court or we have held that an Indian tribe may regulate the use of natural resources outside the tribe's territory.  In fact, in Montana, the Supreme Court did the opposite, holding that while tribes may regulate hunting and fishing by nonmembers on tribal lands, they may not do so on non-Indian fee land.  450 U.S. at 563.

When the Supreme Court has upheld tribal authority to regulate nonmembers' use of natural resources, it has done so because the regulations were a condition of the nonmembers' presence on tribal territory.  See, e.g., id. at 557 (noting that tribes may prohibit hunting and fishing by nonmembers on tribal lands or "*condition their entry* by charging a fee or establishing bag and creel limits" (emphasis added)); see also Merrion, 455 U.S. at 144–45 (characterizing nonmembers' payment of a tax for the severance of oil and gas from tribal lands as a condition of the nonmembers' continued presence on tribal lands).  But the tribal court's adjudication of the water dispute here was not a condition of Defendant's presence on Plaintiff's territory—Defendant used the water only on non-Indian fee land.  Thus, the tribal court did not have jurisdiction arising from the Tribe's authority to exclude nonmembers from its territory.

Nor is Plaintiff's argument persuasive that water and territory are the same. Plaintiff argues that prohibiting the use of water to which it has exclusive rights is identical to excluding people from its territory.  In support, Plaintiff cites City of Albuquerque v. Browner, 97 F.3d 415, 424 (10th Cir. 1996), in which we upheld the United States Environmental Protection Agency's ("EPA") authority to enforce an

9

Indian tribe's water-quality standards upstream from the reservation. But <u>City of Albuquerque</u> does not support Plaintiff's sweeping assertion of tribal jurisdiction. First, the Indian tribe in <u>City of Albuquerque</u> had adopted water-quality standards under the express authorization of the Clean Water Act. <u>Id.</u> at 418. And second, we emphasized that the water-quality standards were enforceable beyond the tribe's territory because the EPA—not the tribe—carried out the enforcement. <u>Id.</u> at 424. Here, by contrast, Plaintiff points to no federal statute authorizing Plaintiff's regulation of the disputed water, and Plaintiff claims for itself the authority to regulate the use of the water beyond its territory.[3] In short, Plaintiff's dispute with Defendant over Defendant's use of water on his property is not a matter of tribal self-government, but a matter of the Tribe's external relations. And tribal sovereignty traditionally does not extend to governing external relations with non-Indians.[4] <u>See</u> <u>Montana</u>, 450 U.S. at 564.

---

[3] At oral argument, Plaintiff's counsel argued that Plaintiff has the authority to regulate Defendant's use of the disputed water only because Defendant's property is within the exterior boundaries of Plaintiff's reservation. Plaintiff's counsel conceded that if Defendant misappropriated tribal water farther upstream, outside of reservation boundaries, then the tribal court would lack jurisdiction. But that distinction is without merit. If owning rights to use the water renders the water equivalent to territory, then the water's location would not affect Plaintiff's plenary authority over it. And the Supreme Court has made clear that non-Indian fee land—like Defendant's property—is not tribal land. <u>See</u> <u>Plains Com.</u>, 554 U.S. at 328. So the Tribe could not exercise plenary jurisdiction over the water on Defendant's property if it could not do so on property outside the exterior boundaries of the reservation.

[4] The district court also rejected an argument that owning easements in the Deep Creek Canal and Lateral No. 9, like owning land in fee simple, gives the Tribe inherent sovereign authority to exclude nonmembers. On that point, Plaintiff's

Because Defendant is not a member of the Tribe and allegedly misappropriated tribal water on non-Indian fee land, the tribal court could have jurisdiction only if Defendant entered "consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements" or if Defendant's conduct "threaten[ed] or ha[d] some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." Id. at 565–66 (citations omitted). The tribal court held, and Plaintiff argues, that the tribal court had jurisdiction under both Montana exceptions.

As to the first exception, Plaintiff asserts that Defendant has agricultural leases on Plaintiff's lands and a farming partnership with a tribe member. Plaintiff argues that Defendant's consensual agreements with both the Tribe and one of its members subject Defendant to the tribal court's jurisdiction under the first Montana exception. But an Indian tribe does not gain plenary jurisdiction over all activities of a nonmember simply by having some contractual relationship with him—the exercise of jurisdiction must have a nexus to the parties' relationship. See Atkinson Trading Co. v. Shirley, 532 U.S. 645, 656 (2001). The dispute must relate to the parties' contractual relationship such that the nonmember can fairly be said to have consented to tribal-court jurisdiction by contracting with the Tribe. See id. at 656–57 (holding

---

opening brief merely defines "easement" before stating that Plaintiff's right to exclude stems from its rights to the water rather than any easements in the canals. We thus do not consider this issue. See Bronson v. Swensen, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

the first Montana exception inapplicable because a non-Indian could not have consented to a tribal regulation by entering an unrelated agreement with the tribe). Plaintiff identifies no connection between Defendant's use of the disputed water on non-Indian fee land and Defendant's agricultural leases on other lands or Defendant's farming partnership. Indeed, this water dispute would be no different even if those agreements did not exist. Without a nexus between Defendant's use of the disputed water and any of those agreements, Plaintiff cannot show that through the agreements, Defendant consented to tribal-court jurisdiction over his use of irrigation water on his non-Indian fee land. Thus, the first Montana exception did not provide the tribal court with jurisdiction.[5]

---

[5] In its reply brief, Plaintiff asserts that this case involves more than just the water dispute. Plaintiff argues that Defendant used his farming partnership with a Ute Tribe member to unlawfully harvest crops on tribal land. Considering this a trespass on tribal land, the tribal court enjoined Defendant from continuing to harvest on those lands. But even so, the dispute about Defendant's water use on his non-Indian fee land has no nexus to Defendant's alleged crop harvesting on tribal land under his farming partnership. So that agreement did not give the tribal court jurisdiction to adjudicate the water dispute.

And to the extent Plaintiff argues that we should enforce the tribal court's injunction against Defendant's continued harvest on tribal lands even if the tribal court lacked jurisdiction over the water dispute, Plaintiff has waived that argument. From the beginning, this lawsuit has focused on enforcing the tribal court's judgment as to the disputed water. The summary-judgment briefing dealt only with the tribal court's jurisdiction over the parties' water dispute. Plaintiff never argued that the district court could enforce the tribal court's crop-harvesting injunction independent of the water dispute. Nor did Plaintiff argue that in its opening brief in this Court. The opening brief only mentions in passing when describing Defendant's farming partnership that the tribal court considered Defendant's crop harvesting a trespass. Plaintiff has thus waived any argument that we should enforce the tribal court's crop-harvesting injunction even if the tribal court lacked jurisdiction over the parties' water dispute. See Reedy v. Werholtz, 660 F.3d 1270, 1274 (10th Cir. 2011) ("[A]

Plaintiff argues also that the tribal court had jurisdiction under the second Montana exception because Defendant's use of the disputed water threatens or directly affects the Tribe's political integrity, economic security, or health or welfare. The Supreme Court has stated that for this exception to apply, the challenged conduct cannot merely injure the tribe but must be "catastrophic for tribal self-government." Plains Com., 554 U.S. at 341 (citation and internal quotation marks omitted). The district court, finding no evidence that Defendant's use of the disputed water had been catastrophic for the Tribe, determined that the tribal court lacked jurisdiction over the dispute.

Plaintiff does not argue that Defendant's use of the disputed water has been "catastrophic for tribal self-government." Instead, Plaintiff argues that the "catastrophic" requirement is dictum we should decline to follow. We disagree. In Plains Commerce, the Supreme Court held that a tribal court lacked jurisdiction to adjudicate a dispute about the sale of non-Indian fee land in part because the second Montana exception did not apply. Id. According to the Court, the exception did not apply because the sale of non-Indian fee land "cannot fairly be called catastrophic for tribal self-government" even if the sale disappoints the tribe. Id. (citation and internal quotation marks omitted). In other words, the Court held that the second Montana exception did not apply because the challenged conduct was not catastrophic to tribal self-government. Thus, it was not dictum, and it binds us here.

---

party waives issues and arguments raised for the first time in a reply brief." (quotation omitted)).

13

Although Plaintiff argues that Defendant's use of the disputed water inflicts more than a minor injury on the Tribe, Plaintiff does not attempt to meet its burden to show that Defendant's use of the disputed water is catastrophic for tribal self-government. And Plaintiff could not easily do so on this record. Defendant has allegedly been using the disputed water for over sixteen years with no apparent effect on Plaintiff's "project of tribal self-government." See Plains Com., 554 U.S. at 341 (noting that the sale of land to a non-Indian could not be catastrophic for tribal self-government because the land had been owned by non-Indians for fifty years and "the project of tribal self-government ha[d] proceeded without interruption"). Defendant purportedly had been using the disputed water for almost thirteen years before the Tribe ever learned of it—and only then because someone reported it. That such a large amount of time passed does not necessarily mean that Defendant's use of the water was lawful or that Plaintiff cannot seek a remedy in an appropriate forum. But it means that the dispute does not sufficiently jeopardize tribal self-government to vest tribal courts with jurisdiction to adjudicate it.

Because neither Montana exception applies to Defendant's alleged conduct, the district court correctly determined that the tribal court lacked subject-matter jurisdiction over the parties' water dispute.

**B.**

Plaintiff challenges also the district court's dismissal with prejudice and denial of Plaintiff's motion for leave to amend. The district court denied leave to amend because it determined that Plaintiff's proposed amendment would be futile. We

usually review the denial of leave to amend for an abuse of discretion, but when the reason for the denial was that amendment would be futile, we review the futility determination de novo.  Jones v. Norton, 809 F.3d 564, 579 (10th Cir. 2015) (citation omitted).

Plaintiff's proposed amended complaint remained a "complaint for recognition, registration, and enforcement of a tribal court judgment."  Plaintiff argues that the proposed amended complaint also sought redress directly under the 1923 Cedarview Decree.  But nowhere did Plaintiff's proposed amended complaint assert a standalone claim arising from the Cedarview Decree.  The allegations in Plaintiff's proposed amended complaint centered on the tribal-court litigation and judgment.  Plaintiff proposed that it would request an injunction requiring Defendant to comply with the Cedarview Decree only as part of its relief to enforce the tribal-court judgment—not as relief for an independent claim based on the Decree.  Because Plaintiff's proposed amended complaint asserted only a claim to recognize and enforce the tribal-court judgment, the district court correctly determined that the amendment would be futile.

As for the district court's dismissal with prejudice, Plaintiff argues that the district court erred because dismissals for lack of jurisdiction should be without prejudice.  But the district court did not dismiss this case for lack of jurisdiction.  The district court dismissed on the merits Plaintiff's claim to enforce the tribal-court judgment because the *tribal court* lacked jurisdiction.  In other words, Plaintiff sought enforcement of a tribal-court judgment, and the district court made the merits

determination that the tribal-court judgment is unenforceable. And to the extent Plaintiff believes a dismissal with prejudice in this case means it cannot seek a decision on the merits in another forum, Plaintiff is mistaken. Dismissal with prejudice bars Plaintiff only from bringing another claim to enforce the tribal-court judgment. It does not bar Plaintiff from pursuing any other claims arising from its water dispute with Defendant. The district court did not err in dismissing with prejudice the claim to enforce the tribal-court judgment.

AFFIRMED.