The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THE CITY OF SEATTLE,
Plaintiff,

v.

SAUK-SUIATTLE TRIBAL COURT; JOSH
WILLIAMS, in his official capacity as Sauk-
Suiattle Tribal Court chief judge; JACKIE
VARGAS, in her official capacity as Sauk-
Suiattle Tribal Court clerk; and SAUK-
SUIATTLE INDIAN TRIBE, Defendants

NO. 2:22-cv-142

**ORDER (1) DENYING DEFENDANTS'
MOTION TO DISMISS; AND
(2) STAYING CASE**

## I.  INTRODUCTION

This matter comes before the Court on the Motion to Dismiss filed by Defendants Sauk-Suiattle Tribal Court (the "Tribal Court"), Josh Williams in his official capacity as Tribal Court chief judge, Jackie Vargas in her official capacity as Tribal Court clerk, and the Sauk-Suiattle Indian Tribe ("Sauk-Suiattle" or the "Tribe") (collectively, "Defendants"). Defendants seek dismissal of this preliminary injunction action, filed by Plaintiff the City of Seattle (the "City"). Having reviewed the briefs and exhibits filed in support of and opposition to the Motion to Dismiss, and the relevant authority, the Court finds and rules as follows.

ORDER (1) DENYING MOTION
TO DISMISS AND (2) STAYING CASE
- 1

## II.    BACKGROUND

On January 7, 2022, the Sauk-Suiattle Indian Tribe filed a civil complaint against the City in the Sauk-Suiattle Tribal Court. *See Sauk-Suiattle Indian Tribe v. City of Seattle*, Case No. SAU-CIV-01/22-001 (Sauk-Suiattle Tribal Ct. Jan. 18, 2022), Exhibit A to Compl., Dkt. No. 2-1. The Tribal Court complaint seeks a declaratory judgment concerning salmon "within the territory of the Sauk-Suiattle Indian Tribe." Tribal Court Compl., ¶ a. In that lawsuit, the Tribe claims infringement of certain rights stemming from the construction and operation of three dams on the Skagit River by Seattle City Light, which is owned by the City. In particular, the Tribe alleges that the dams block upstream and downstream passage of several species of migratory fish, threatening the Tribe's livelihood and wellbeing.

The dams are not located within the boundaries of the Sauk-Suiattle Reservation, but upstream from where the Skagit River meets a tributary, the Sauk River, which does flow through the reservation. In asserting the Tribal Court's jurisdiction over the City, the Tribe stated in its complaint that by operation of the dams, the City's "conduct threatens or imperils the health, welfare, safety and economic security of the Sauk-Tribal [*sic*] Indian Tribe and such impacts are felt by the Sauk-Suiattle Indian Tribe within the Sauk-Suiattle Reservation and lands and waters within the Ceded Territory of the Sauk-Suiattle Indian Tribe."  Tribal Court Compl., ¶ 3.A. The Tribe alleges violations of its usufructuary rights under the 1855 Treaty of Point Elliott, and violations of the First, Fourth, and Fourteenth Amendments to the U.S. Constitution, and the American Indian Religious Freedom Act (AIRFA), 42 U.S.C. § 1996. On February 3, 2022 counsel for Seattle appeared in the Tribal Court and filed a motion for dismissal of the civil action for lack of subject-matter jurisdiction. At this time, the motion is presumably still pending.

ORDER (1) DENYING MOTION
TO DISMISS AND (2) STAYING CASE

- 2

On February 7, 2022, the City filed this action, seeking an injunction preventing the Tribal Court from exercising jurisdiction over it. Defendants oppose that motion, and on February 14, 2022, filed the instant Motion to Dismiss, arguing this Court should require the City first to exhaust its remedies in the Tribal Court.

### III.   DISCUSSION

#### A.  *National Farmers* Exhaustion Requirement

This Court has jurisdiction to consider whether the Sauk-Suiattle Tribal Court has jurisdiction to review the Tribe's complaint against the City. *Nat'l Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845, 851–52 (1985) (In "questions concerning the extent to which Indian tribes have retained the power to regulate the affairs of non-Indians . . . the governing rule of decision has been provided by federal law."). As the Supreme Court stated in *National Farmers*, "a federal court may determine under [28 U.S.C.] § 1331 whether a tribal court has exceeded the lawful limits of its jurisdiction." *Id*. at 853; *see also Boozer v. Wilder*, 381 F.3d 931, 934 (9th Cir.2004) ("Non–Indians may bring a federal common law cause of action under 28 U.S.C. § 1331 to challenge tribal court jurisdiction.").

*National Farmers* also cautioned, however, that a federal court should "stay[] its hand until after the Tribal Court has had a full opportunity to determine its own jurisdiction and to rectify any errors it may have made*.*" *Nat'l Farmers*, 471 U.S. at 857; *see also Elliott v. White Mountain Apache Tribal Ct*., 566 F.3d 842, 846 (9th Cir. 2009) ("[A] plaintiff must first exhaust tribal court remedies.") (citing *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 19 (1987); *Nat'l Farmers,* 471 U.S. at 856–57). "Allowing tribal courts to make an initial evaluation of jurisdictional questions serves several important functions, such as assisting in the orderly

ORDER (1) DENYING MOTION
TO DISMISS AND (2) STAYING CASE

administration of justice, providing federal courts with the benefit of tribal expertise, and clarifying the factual and legal issues that are under dispute and relevant for any jurisdictional evaluation." *DISH Network Serv. L.L.C. v. Laducer*, 725 F.3d 877, 882 (8th Cir. 2013). Because "the existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions," the Supreme Court has held that "examination should be conducted in the first instance in the Tribal Court itself." *Nat'l Farmers*, 471 U.S. at 855–56 (exhaustion requirement promotes "a policy of supporting tribal self-government and self-determination," and "the orderly administration of justice in the federal court," by "allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed."). "Exhaustion of tribal court remedies, moreover, will encourage tribal courts to explain to the parties the precise basis for accepting jurisdiction, and will also provide other courts with the benefit of their expertise in such matters in the event of further judicial review" *Nat'l Farmers*, 471 U.S. at 856–57.

### B.  Exception to Exhaustion Requirement Where Jurisdiction Is "Plainly" Lacking

Against the backdrop of these practical and prudential considerations, the Supreme Court has outlined four exceptions to the exhaustion requirement: (1) when an assertion of tribal court jurisdiction is "motivated by a desire to harass or is conducted in bad faith"; (2) when the tribal court action is "patently violative of express jurisdictional prohibitions"; (3) when "exhaustion would be futile because of the lack of an adequate opportunity to challenge the [tribal] court's jurisdiction"; and (4) when it is "plain" that tribal court jurisdiction is lacking, so that the

ORDER (1) DENYING MOTION
TO DISMISS AND (2) STAYING CASE

- 4

exhaustion requirement "would serve no purpose other than delay." *Elliott v. White Mountain Apache Tribal Ct.*, 566 F.3d 842, 847 (9th Cir. 2009) (citing *Nevada v. Hicks*, 533 U.S. 353, 369 (2001)).

In this case, the City has argued only that the fourth exception to the exhaustion requirement applies: that jurisdiction is so "plainly lacking," requiring the City to exhaust its remedies would serve no purpose other than to cause delay. Circuit courts, including the Ninth Circuit, have apparently not articulated precisely "how 'plain' the issue of tribal court jurisdiction needs to be before the exhaustion requirement can be waived." *DISH Network*, 725 F.3d at 883. The Eighth Circuit in *DISH*, however, observed that the Supreme Court has indicated "that the bar is quite high." *Id.* (requirement to exhaust should be waived only when the issue of tribal court jurisdiction is invoked for "no other purpose than delay.") (citing *Strate v. A-1 Contractors*, 520 U.S. 438, 459, n. 14 (1997)). "In other words the exhaustion requirement should be waived only if the assertion of tribal court jurisdiction is frivolous or obviously invalid under clearly established law. In circumstances where the law is murky or relevant factual questions remain undeveloped, the prudential considerations outlined in *National Farmers Union* require that the exhaustion requirement be enforced." *DISH Network*, 725 F.3d at 883 (citing *National Farmers*, 471 U.S. at 856–57). Where the assertion of tribal court jurisdiction is "'colorable' or 'plausible,' the exception does not apply and exhaustion of tribal court remedies is required." *Elliott*, 566 F.3d at 848.

### C.  Whether Assertion of Jurisdiction in Sauk-Suiattle Tribal Court is "Frivolous"

As federal courts have repeatedly observed, "determining the scope of tribal court jurisdiction is not an easy task. . . There is no simple test for determining whether tribal court

ORDER (1) DENYING MOTION
TO DISMISS AND (2) STAYING CASE

- 5

jurisdiction exists." *Elliott*, 566 F.3d at 849 (quoting *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1228 (9th Cir.1989)); *see also Philip Morris USA, Inc. v. King Mountain Tobacco Co*., 569 F.3d 932, 937 (9th Cir. 2009) ("Tribal jurisdiction cases are not easily encapsulated, nor do they lend themselves to simplified analysis. The Supreme Court itself observed that questions of jurisdiction over Indians and Indian country are a complex patchwork of federal, state, and tribal law. And we have acknowledged that there is no simple test for determining whether tribal court jurisdiction exists.") (citations omitted).

From a series of "foundational" Supreme Court cases, however, the Ninth Circuit has "discern[ed] the ground rules governing tribal adjudicatory jurisdiction over nonmembers." *Philip Morris*, 569 F.3d at 939 (citing, *inter alia*, *Montana v. United States*, 450 U.S. 544 (1981)). The "general proposition" is that "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." *Montana*, 450 U.S. at 565.  In *Montana v. United States*, the Supreme Court identified two exceptions to this rule: (1) a "tribe may regulate . . . the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements"; and (2) a "tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id*. at 566. In addition to deriving limited jurisdiction from the "inherent sovereignty" at issue in *Montana*, "tribes may also be granted jurisdiction via treaty or congressional statute." *Philip Morris*, 569 F.3d at 939-40.

Defendants argue here that the Sauk-Suiattle Tribal Court has jurisdiction over the City under the second *Montana* exception, which recognizes tribal jurisdiction over "conduct [that]

ORDER (1) DENYING MOTION
TO DISMISS AND (2) STAYING CASE

- 6

threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." 450 U.S. at 566. The City claims the second exception is inapposite to the facts here, arguing that it applies only to conduct taking place entirely within a reservation, not outside its boundaries.

It is true that it "is at least strongly implied" that this exception is only applicable to on-reservation activity. *Dolgencorp, Inc. v. Mississippi Band of Choctaw Indians*, 746 F.3d 167, 176 (5th Cir. 2014). Nevertheless, according to at least one appellate court, "the Supreme Court has never explicitly held that Indian tribes lack inherent authority to regulate nonmember conduct that takes place outside their reservations." *Id*. Indeed, several courts have concluded they may not necessarily lack such authority, at least under some circumstances. *See, e.g., DISH Network*, 725 F.3d at 884 ("Even if the alleged abuse of process tort occurred off tribal lands, jurisdiction would not clearly be lacking in the tribal court because the tort claim arises out of and is intimately related to [plaintiff] DISH's contract with [tribal member defendant] and that contract relates to activities on tribal land."). Moreover, while in some cases "the question of where activity or conduct took place may be clear," where, as the Tribe has argued here, "a nonmember begins an activity outside the reservation, the effects of which are directed on to the reservation, it is not clear that such an activity occurred wholly outside the reservation." *Sprint Commc'ns Co. L.P. v. Wynne*, 121 F. Supp. 3d 893, 900 (D.S.D. 2015). It is appropriate, therefore, that "[t]he precise location of [the] activity or conduct should be evaluated by the tribal court when it applies *Montana* in the first instance." *Id*.

Jurisdictional questions are notoriously fact-intensive, and the facts of this case may be distinguishable in a number of potentially material ways from the precedent on which the City

ORDER (1) DENYING MOTION
TO DISMISS AND (2) STAYING CASE

- 7

relies and could at least arguably bring the tribal lawsuit within the ambit of the claimed *Montana*

exception. For example, the Tribe seeks a declaration that the salmon population "*within the*

*territory of the Sauk-Suiattle Indian Tribe* is protected." Tribal Court Compl., ¶ a. (emphasis

added). While the City maintains that "there is no physical on-reservation impact" in this case, the

Tribe has alleged that the upstream activities on the Skagit River do in fact have a direct impact

on the health of the salmon population downstream, within the reservation. Depending on how the

facts in this case develop, this argument may be unfounded or attenuated, and ultimately

unpersuasive; but the Court cannot say at this point that it is frivolous. The lawsuit concerns

conduct on and affecting rivers, making the jurisdictional inquiry particularly difficult to limit

according to geopolitical boundaries. *See, e.g., Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d

565, 578 (9th Cir. 2018) ("It is no defense that [Canadian defendant's] wastewater outfalls were

aimed only at the Columbia River, which in turn was aimed at Washington. Rivers are nature's

conveyor belts."). In addition, the tribal lawsuit is based in part on interpretation of Sauk-Suiattle

tribal law and Indian treaty rights, which would benefit from the Tribal Court's expertise. *See*

*Tidwell v. Harrah's Kansas Casino Corp.*, 322 F. Supp. 2d 1200, 1206 (D. Kan. 2004) ("If

plaintiff's case involved questions of tribal law, the benefit of tribal court expertise would be

unquestionable."). The breadth and complexity of these factual and legal issues are well-suited for

review—in the first instance, at least—by the Tribal Court. *See Nat'l Farmers*, 471 U.S. at 855–

56, 105 S.Ct. 2447 ("[The] policy of supporting tribal self-government and self-determination . . .

favors a rule that will provide the forum whose jurisdiction is being challenged the first

opportunity to evaluate the factual and legal bases for the challenge."); *Sprint*, 121 F. Supp. 3d at

901 ("The controlling principles are broad and abstract and must be carefully applied to the

ORDER (1) DENYING MOTION
TO DISMISS AND (2) STAYING CASE

- 8

myriad of factual scenarios they govern.") (citation omitted).

It is true that the City finds support in many of the "broad and abstract" principles announced in its cited authority. In the absence of controlling precedent directly on point, however, it cannot be said that the Tribe's invocation of tribal court jurisdiction in this case is frivolous. To be clear, the Court is not ruling here that the Tribal Court has jurisdiction, and nothing the Court has said about the plausibility of jurisdictional arguments should be construed as commentary on the relative merit of those arguments. The Court holds only that the Tribe is entitled to make these arguments to the Tribal Court first.

Finally, the City argues that jurisdiction in the Sauk-Suiattle Tribal Court is lacking because under Section 313 of the Federal Power Act ("FPA"), the U.S. Courts of Appeals have "exclusive" jurisdiction "to affirm, modify, or set aside" FERC's orders. *See* 16 U.S.C. § 825l. This clause "necessarily preclude[s] de novo litigation between the parties of all issues inhering in the controversy, and all other modes of judicial review." *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958).

Again, the question is whether the Tribe's assertion of tribal court jurisdiction is "frivolous." The complaint filed in the Tribal Court seeks only declaratory relief, including a declaration of rights concerning salmon and the legal obligations of the members of the Sauk-Suiattle Tribe to protect those rights, and whether the City's actions interfere with those rights and obligations. Tribal Court Compl., ¶¶ a-g. While the claims are certainly related to the FERC license at issue, it is not "frivolous" to argue that the lawsuit—seeking as it does only declaratory relief—is not an attempt to "affirm, modify, or set aside" that license. The Tribe has at least a colorable argument that its claims proceeding in Tribal Court are "wholly collateral to a statute's

ORDER (1) DENYING MOTION
TO DISMISS AND (2) STAYING CASE

review provisions and outside the agency's expertise," and not, therefore, precluded by Section 313 of the FPA. *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994) (citation omitted). This question is therefore also subject to the *National Farmers* exhaustion requirement.

## IV.    CONCLUSION

"Whether the federal action should be dismissed, or merely held in abeyance pending the development of further Tribal Court proceedings, is a question that should be addressed in the first instance by the District Court." *Nat'l Farmers*, 471 U.S. at 857. Accordingly, the Court DENIES Defendants' Motion to Dismiss, but for the foregoing reasons hereby STAYS and statistically closes this matter "until after the Tribal Court has had a full opportunity to determine its own jurisdiction." *Id.,* 471 U.S. at 857.

DATED this 5th day of July, 2022.

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER (1) DENYING MOTION
TO DISMISS AND (2) STAYING CASE

- 10